## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**THE OHIO CASUALTY INSURANCE COMPANY**

**CIVIL ACTION**

**VERSUS**

**NO. 24-22-JWD-SDJ**

**GRE3N, LLC ET AL**

## <u>RULING AND ORDER</u>

This matter comes before the Court on the *Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss* (Doc. 37) and the corresponding *Memorandum of Law in Support of Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Amended Complaint* (Doc. 37-1) (collectively, "*Motion to Dismiss*"), filed by Defendants Gre3n, LLC ("Gre3n" or "Defendant Gre3n"), Isiah Lord Thomas, III ("Isiah Thomas" or "Defendant Isiah Thomas"), Lynn Thomas ("Lynn Thomas" or "Defendant Lynn Thomas") and Isiah International, LLC ("Isiah International" or "Defendant Isiah International") (collectively, "Defendants"). Plaintiff Ohio Casualty Insurance Company ("Plaintiff") filed *The Ohio Casualty Insurance Company's Opposition to Defendants' Fed. R. Civ. 12(B)(6) Motion to Dismiss* ("*Opposition*") (Doc. 40). Defendants then filed *Defendants' Reply in Support of Their Fed. R. Civ. P. 12(b)(6) Motion to Dismiss* ("*Reply*") (Doc. 41), and Plaintiff filed *Plaintiff's Surreply in Support of Opposition to Motion to Dismiss* ("*Surreply*") (Doc. 44).

### I.     BACKGROUND

At this stage in the pleadings, the Court accepts Plaintiff's well-pleaded allegations. This action arises out of a May 2022 contract between Gre3n and Dixie Electric Membership Corporation ("DEMCO") for Gre3n to do "utility vegetation line clearance for approximately 572 miles of right-of-way in connection with storm restoration work being performed in Louisiana's East Baton Rouge and Livingston Parishes[.]" (Doc. 35 at ¶ 11.) Under the contract, the work was

to be completed by December 30, 2022. (*Id.* at ¶ 13.) However, as of December 30, 2022, the work was not completed. (*Id.* at ¶ 35.) "DEMCO made several demands upon Gre3n" to complete the work, and "[a]n agreement was reached" for a June 2023 completion date. (*Id.* at ¶¶ 36, 38.) However, "on April 20, 2023, Gre3n Isiah International, LLC notified DEMCO that it was terminating its working relationship with DEMCO and would not complete the Project that was the subject of the Contract." (*Id.* at ¶ 39.)

"In connection with the Contract, Plaintiff issued a 'Contractor's Bond,' Bond No. 268016514, on May 18, 2022, as the surety, in favor of Gre3n, LLC, as the principal, and DEMCO, as the owner and obligee, in the penal sum of $1,211,500.00 ('Bond')." (*Id.* at ¶ 17.) This bond "called for Plaintiff to indemnify DEMCO for 'all costs and damages' suffered by DEMCO should Gre3n, LLC fail to complete or timely complete the Project." (*Id.* at ¶ 21.) Plaintiff, in return, "required an indemnity agreement from Isiah Thomas, Lynn Thomas, and Gre3n, LLC." (*Id.* at ¶ 22.) According to Plaintiff, "an Indemnity Agreement was executed by Robbi Jones, on behalf of Gre3n, LLC, naming indemnitors: Isiah Thomas, Lynn Thomas, and Gre3n, LLC[.]" (*Id.* at ¶ 23.) The Indemnity Agreement allowed the indemnitors "to obtain the issuance of a bond as required for the Contract[]" in return for a promise "to indemnify and save Plaintiff harmless from and against al loss which Plaintiff may sustain, incur, or become liable for by reason of having executed any bonds on behalf of Gre3n, LLC or in enforcing the Indemnity Agreement." (*Id.* at ¶¶ 25–26.)

As a result of Gre3n's alleged default and termination of the contract, "DEMCO filed with Plaintiff a bond claim in the amount of $913,700.000 to pay for the completion of the Project." (*Id.* at ¶ 40.) This claim was decreased on September 21, 2023, to $600,638.79. (*Id.* at ¶ 41.) Plaintiff then sought $500,000.00 cash collateral from the indemnitors on September 25, 2023. (*Id.* at ¶ 42.) On October 2, 2023, Plaintiff claims that it was informed by Defendants' counsel that the

indemnitors were "refusing to deposit the requested collateral." (*Id.* at ¶ 43.) "Counsel stated that Gre3n, LLC is insolvent and winding down its business." (*Id.*) Plaintiff then requested, pursuant to the Indemnity Agreement, "access to the Indemnitors' books, accounts, and records for inspection." (*Id.* at ¶ 44.) "Despite representations that financial records would be provided, Plaintiff has not received access to Indemnitors' books or records. Nor has Plaintiff received any collateral from the Indemnitors." (*Id.* at ¶ 45.)

Plaintiff settled with DEMCO in December of 2023 for an amount of $596,508.79. (*Id.* at ¶ 47.) As part of that settlement, "DEMCO assigned and transferred to Plaintiff 'any debt, right, and/or cause of action it now has for money due against Gre3n, LLC or its successors or assigns.'" (*Id.* at ¶ 50.)

Plaintiff is incorporated in New Hampshire with its principal place of business in Boston, Massachusetts. (*Id.* at ¶ 4.) Gre3n is incorporated in Delaware with its principal place of business in Chicago, Illinois. (*Id.* at ¶ 5.) Isiah International is incorporated in Illinois with its principal place of business in Chicago, Illinois. (*Id.* at ¶ 7.) Lynn Thomas and Isiah Thomas are residents of New York. (*Id.* at ¶¶ 9–10.)

Plaintiff now sues Defendants for:

(1) breach of the Indemnity Agreement, asking the Court for "the entry of a judgment compelling Indemnitors to perform their obligation to provide Plaintiff with access to their books and records and to reimburse Plaintiff in an amount no less than $611,508.79, plus interests and costs, along with any other damages suffered by Plaintiff as a result of Indemnitors [sic] failure to do so[,]" (*id.* at ¶ 59);

(2) contractual indemnification, asking the Court to enter "a judgment in an amount equal to the loss incurred by Plaintiff by reason of having executed the Bond or having to

enforce the Indemnity Agreement, including related attorneys' fees, costs, and interest[,]" (*id.* at ¶ 66);

(3) breach of contract pursuant to the Settlement Agreement that assigned Plaintiff DEMCO's rights and causes of action against Gre3n, LLC, asking the Court for "the entry of judgment against Gre3n, LLC for all damages suffered by Plaintiff as a result of Gre3n, LLC's breach of the Contract[]" and for "the entry of judgment against Isiah International, LLC for damages suffered by Plaintiff as a result of the breach of the DEMCO contract, as Isiah International, LLC and Gre3n, LLC are a single economic entity[,]" (*id.* at ¶¶ 72–73); and

(4) that Gre3n and Isiah International constitute a single economic entity such that "[a]n overall element of unfairness and injustice is present if Isiah International, LLC is not held wholly or equally responsible and liable for the breach of both contractual agreements and is able to hide behind the façade of Gre3n, LLC by arguing it is insolvent[,]" asking the Court to hold Isiah International also liable," (*id.* at ¶¶ 77, 79, 80).

## II.  PARTIES' ARGUMENTS

### A.    Defendants' *Motion to Dismiss* (Docs. 37 and 37-1)

Defendants ask the Court to dismiss with prejudice the Amended Complaint as to Defendants Isiah Thomas, Lynn Thomas, and Isiah International; to dismiss with prejudice Count IV of the Amended Complaint against Defendant Gre3n; and to dismiss Counts I and II of the Amended Complaint against Defendant Gre3n without prejudice. (Doc. 37 at 1.)

According to Defendants, "Counts I and II of Plaintiffs' Amended Complaint overlap." (Doc. 37-1 at 1 (citing Doc. 35).) They assert that both of these counts, which allege "respectively,

'Breach of Indemnity Agreement' and 'Contractual Indemnification,'" should be dismissed as to Defendants Isiah Thomas and Lynn Thomas because they are not "parties to, nor signatories of, that contract." (*Id.*) In addition, Defendants claim, Plaintiff has not alleged "that the Indemnity Agreement has ever been modified to include them as parties to it (which is a requirement of the terms of that document)[,]" nor "that anyone has actually signed this contract on their behalf[.]" (*Id.* at 2.) Defendants note that "Counts I and II are the only counts with allegations specifically pertaining to" Defendants Isiah and Lynn Thomas, and request that "to the extent that Plaintiff's Amended Complaint still asserts all causes of action against all Defendants, Isiah and Lynn Thomas should be dismissed from all counts, with prejudice." (*Id.* at 2 n.2.)

Next, Defendants turn to Count IV, in which they argue that after pleading this count under Louisiana law in its initial complaint, "Plaintiff is pivoting to Delaware law to suggest that it has the legal ability to hold Isiah International liable for contracts to which only Gre3n is a party." (*Id.* at 2–3.) They argue that "Plaintiff's newly re-cast claims that Gre3n and Isiah International operate as a 'Single Economic Entity' under Delaware law are even weaker than they were under Louisiana law." (*Id.* at 3.) Defendants argue that "to state a claim for a 'Single Economic Entity' theory under Delaware law, a plaintiff must specifically plead facts establishing that a corporation, through its alter-ego, has created a sham entity that is specifically and intentionally designed to defraud investors and creditors." (*Id.*) They assert that such claims that sound in fraud are "subject to particular scrutiny." (*Id.*) Defendants assert that Plaintiff has not pled any facts "plausibly stating (much less stating with the particularity of a fraud claim) that Gre3n was an entity set up solely and intentionally to work a fraud on creditors[.]" (*Id.*)

In addition, they argue that the documents Plaintiff has attached to its pleading "preclude such pleading because they demonstrate that at the time of contracting and thereafter, Gre3n

maintained a legal and independent significance of its own[.]" (*Id.*) Defendants point to Delaware law, which they assert requires that plaintiffs pleading under "a 'Single Economic Entity' theory must plead facts . . . that state a combination of factors including whether: the company was adequately capitalized; the dominant company siphoned company funds; the company simply functioned as a façade for the dominant shareholder; the companies disregarded corporate formalities; and the solvency of the company." (*Id.*) According to Defendants, Plaintiff cannot show the "required facts setting out Isiah International's utter domination of Gre3n such that Gre3n was nothing more than a sham." (*Id.* at 4.) Defendants argue that "Plaintiff cannot muster allegations of fact sufficient to state that Isiah International used Gre3n to defraud creditors to legally bind Isiah International to Gre3n's contracts[,]" requiring Count IV to be dismissed with prejudice, as well as Counts I through III to the extent that they are asserted against Isiah International. (*Id.*) Defendants also ask that Counts I and II be dismissed without prejudice as to Gre3n because "Plaintiff has misdescribed the parties, terms and scope of the putative Indemnity Agreement[.]" (*Id.*)

According to Defendants, "Gre3n entered a contract with Dixie Electric Membership Corporation ('DEMCO') to provide for 'utility vegetation line clearance'" valued at $1,211,500.00. (*Id.* at 4–5.) "DEMCO required Gre3n to execute a contractor's bond[,]" on which Plaintiff acted as surety. (*Id.* at 5.) "That bond required Plaintiff to indemnify DEMCO for "all costs and damages" incurred by DEMCO should Gre3n fail to complete Work." (*Id.*) In exchange, Defendants claim, Gre3n executed an Indemnity Agreement as required by Plaintiff "for any obligation Plaintiff may incur under the bond." (*Id.*)

Defendants argue that the first two pages of the document containing the Indemnity Agreement are not, in fact, an indemnity agreement but are instead "entitled 'Supply and Service

Application[,]'" in which Defendants Isiah Thomas and Lynn Thomas "are listed in a table entitled 'Owner Data/Indemnitors.'" (*Id.*) Defendants argue that Isiah Thomas and Lynn Thomas are included pursuant to instructions to provide information on all owners, and that this is the only specific reference to Isiah Thomas and Lynn Thomas in the document. (*Id.*) In addition, they assert, "Defendant Isiah International is not mentioned anywhere" in the document. (*Id.*) Defendants argue that only the last page of the agreement "is entitled 'Indemnity Agreement.'" (*Id.*) They contend that "[i]n that document, the 'Agreement' is defined as '[t]his Indemnity Agreement, and any other agreement between Indemnitor and Surety executed for Surety's benefit.'" (*Id.*) Defendants argue that the "'Supply and Service Application' is not mentioned in the single-page Indemnity Agreement[]" except to state that the indemnitor represents "that all statements in it are 'true and made without reservation to induce [Plaintiff] to extend surety credit on its [again, singular tense] behalf in reliance on the [Indemnity] Agreement[.]'" (*Id.* at 5–6 (alterations made in *Motion to Dismiss*).) Defendants assert that "Indemnitor" in the agreement includes only those who have signed, "their current and future subsidiaries and affiliates," or those added by written agreement. (*Id.* at 6.) In the agreement, Defendants claim, the only signatory block filled in is one for Gre3n, which was signed by Robbi J. Jones. (*Id.*) According to Defendants, Isiah Thomas, Lynn Thomas, and Isiah International are therefore not indemnitors, parties, or signatories. (*Id.* at 7.) In addition, Defendants note that "the Indemnity Agreement is undated." (*Id.*)

Defendants argue that Plaintiff's allegation that Gre3n and Isiah International are acting as one entity fails because "Plaintiff does not allege that Gre3n is a subsidiary, affiliate or a directly related entity to Isiah International." (*Id.* at 8.) Instead, according to Defendants, Plaintiff alleges only common owners, "certain common directors and employees[,]" as well as "that Gre3n and Isiah International utilize the same website and phone numbers, that certain logos have the word

Gre3n and also "Isiah International," and that Gre3n had financial difficulties." (*Id.*) They argue that despite Plaintiff's allegation "that Gre3n and Isiah International share offices," the address listed for Gre3n in Plaintiff's pleading and the certificate of liability insurance "is not alleged to have been used or shared by Isiah International." (*Id.*) Defendants argue that Plaintiff has not alleged any "other actual 'overlap' facts (as opposed to baseless conclusions alleged mostly on information and belief)[.]" (*Id.*)

Defendants assert that the underlying contract with DEMCO "confirms that Gre3n was a viable, independent entity[]" because "[t]he contract is by and between DEMCO and Gre3n, only." (*Id.* at 9.) According to Defendants, DEMCO "had the opportunity to investigate and evaluate Gre3n before contracting with it[]" and "knew about Isiah International all along[,]" but is not alleged to have ever "expressed any concern that the rights and obligations under the contract were being used by or assigned to Isiah International." (*Id.*) Defendants argue that "the DEMCO/Gre3n contract expressly precludes such assignment without DEMCO's consent and it gives DEMCO audit rights into Gre3n's finances and operations." (*Id.*) According to Defendants, despite knowing of "the putative overlap between the two entities from the outset[,]" DEMCO "did not assert any claims under Article VI, Sections 7 and 9 or otherwise." (*Id.*)

Defendants argue that Lynn Thomas, Isiah Thomas, and Isiah International "are not parties to, or signatories of," the Indemnity Agreement and therefore "cannot be [held] liable as 'Indemnitors' under it." (*Id.* at 10.) Defendants contend that the Amended Complaint does not allege, and the Indemnity Agreement does not state, that Robbi Jones ever represented she was authorized to sign on behalf of Isiah Thomas or Lynn Thomas. (*Id.* at 13.) Instead, they assert, "Robbi Jones signed only on behalf of Gre3n, not for any of the other defendants as now argued." (*Id.*) As a result, they insist, Counts I and II should be dismissed against Lynn Thomas, Isiah

8

Thomas, and Isiah International with prejudice, and dismissed against Gre3n with leave to replead. (*Id.*)

Next, Defendants argue that the Court should dismiss Count IV "because Plaintiff does not allege sufficient facts to state a colorable action for a finding that, despite being distinct corporate entities, in reality, Isiah International and Gre3n operate as a 'Single Economic Entity' under Delaware law." (*Id.* at 14.) They contend that "Plaintiff does not allege facts (much less, heightened, specific fraud facts) that Gre3n was established and conducted as an entity intended to defraud its creditors[.]" (*Id.*) Defendants argue that Plaintiff has not pled sufficient specific facts to state a claim that Gre3n was a sham used as a vehicle for fraud, nor that Isiah International was directly related to Gre3n, nor that Isiah International committed any wrongdoing "with regard to the creation and operation of Gre3n." (*Id.* at 15–17.) Instead, Defendants argue, "Plaintiff's claim is that Gre3n breached the Indemnity Agreement, so Isiah International should be held to account for it and Gre3n's other contractual obligations." (*Id.* at 16.)

Defendants contend that Plaintiff alleges that Gre3n was licensed to do business in Louisiana, and that there are no allegations that "Gre3n did not maintain separate legal and independent significance." (*Id.* at 17.) Defendants assert that "[t]here are no factual allegations Isiah International "dominates" Gre3n, that it has ever intentionally manipulated Gre3n's separate corporate form, or that it has ever used Gre3n as a vehicle through which to defraud DEMCO, Plaintiff or any other entity." (*Id.* at 17–18.) Consequently, they argue, "Plaintiff has failed to plead facts necessary to make veil-piercing justifiable on grounds of equity." (*Id.* at 18.) Furthermore, they argue, "Plaintiff cannot ever plead such facts." (*Id.*) Defendants argue that Count IV should be dismissed with prejudice and that all claims against Isiah International should be dismissed with prejudice because "there are no facts pled to establish Gre3n was designed to as a vehicle to

commit fraud on DEMCO, Plaintiff or any other entity, or to enable this Court to disregard the corporate form between Gre3n and [Isiah] International." (*Id.* at 19.)

### B.    Plaintiff's *Opposition* (Doc. 40)

In response, Plaintiff argues that it has met the "fair notice" pleading required by Rule 8 of the Federal Rules of Civil Procedure. (Doc. 40 at 7.) It contends that Isiah International and Gre3n are a single economic entity and that it did plead fraud sufficient to pierce the corporate veil. (*Id.*) Specifically, Plaintiff argues that "Isiah International, LLC did all the negotiating pre-contract" and that "Plaintiff and DEMCO were deceived by reliance on false representations by Isiah International, LLC that Gre3n, LLC would complete the work as stated in its contract with DEMCO." (*Id.* at 7–8.) Plaintiff argues that Isiah International, not Gre3n, "conducted the agreed-upon contract work," and that Isiah International "continued to handle all communications with DEMCO, directed the work, and provided the daily work summaries, not Gre3n, LLC." (*Id.* at 8.) According to Plaintiff, Gre3n is "a sham entity and simply a façade for Isiah International, LLC[.]" (*Id.*) Plaintiff argues that as a result, Isiah International "intends that Gre3n, LLC becomes judgment-proof while Isiah International, LLC retains funds received from DEMCO and has no liability for its breach of contract." (*Id.* at 8–9.)

Next, Plaintiff argues that fraud is not the only reason to pierce the corporate veil. (*Id.*) It asserts that Defendants have "refuse[d] to provide [] financial records despite their obligation to do so[,]" which makes it "difficult for Plaintiff to gain possession of evidence regarding the suspected siphoning of money from Gre3n, LLC to Isiah International, LLC[.]" (*Id.* at 10.) Plaintiff argues that "an overall element of unfairness and injustice is present if Isiah International, LLC is not held wholly or equally responsible and liable for the breach of both contractual agreements and can hide behind the façade of Gre3n, LLC by arguing it is insolvent[.]" (*Id.*)

Plaintiff asserts that "the legal fiction of a distinct corporation may be disregarded when a corporation is so organized and controlled as to make it merely an instrumentality or adjunct of another corporation[,]" and this is such an incident. (*Id.* at 11.) It argues that Isiah International is not Gre3n's parent company and that Gre3n "did not operate as a distinct entity[.]" (*Id.*) Instead, Plaintiff contends, the two operated as a single economic entity. (*Id.*) Plaintiff points to their shared principal place of business and shared address, shared telephone number, and shared website. (*Id.* at 12.) It also points to Gre3n's logo on the website, which Plaintiff asserts is "Gre3n Isiah International, LLC[,]" and Gre3n's logo on its vehicles, which Plaintiff asserts is "Gre3n, Isiah International, LLC." (*Id.*) Plaintiff further asserts that the shared website states "'Gre3n is an integral part of the Isiah International family of companies.'" (*Id.*) Plaintiff asserts that Gre3n has been doing business "under the name Isiah International, LLC[,]" and that the two comingle assets. (*Id.*) Furthermore, it alleges that all communications with DEMCO took place through Isiah International, not Gre3n. (*Id.* at 12–13.) Finally, Plaintiff alleges that Gre3n "is not adequately capitalized and is now insolvent[]" because of "an unclear allocation of profits and losses" between Gre3n and Isiah International, as well as "centralized accounting," Isiah International's paying salaries and other expenses for Gre3n, shared financing, [and] a failure "to document exchanges of funds[.]" (*Id.* at 13.) Plaintiff asserts that it believes Gre3n is "insolvent largely because Isiah International, LLC siphoned funds from Gre3n, LLC." (*Id.*)

Plaintiff argues that "fact discovery will show that Gre3n, LLC is insolvent due to the intentional acts of Isiah International, LLC." (*Id.*) It asserts that allowing Isiah International to "hide behind the façade of Gre3n, LLC by arguing it is insolvent" would present "[a]n overall element of unfairness and injustice[.]" (*Id.*)

11

Plaintiff contends that it "has sufficiently pleaded (1) that defendants 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness' is present." (*Id.* at 14.) It argues that it has "clearly alleged facts sufficient to establish the elements required to assert the single economic entity theory" and that the Court should, therefore, deny Defendants' motion to dismiss Count IV, as well as its motion to dismiss Counts I through III against Isiah International. (*Id.*)

Plaintiff argues that there are no grounds to dismiss Counts I and II as to Gre3n, which "is a party to the Indemnity Agreement and, as alleged in the Complaint, . . . has breached that Indemnity Agreement." (*Id.* at 15.) It further argues that Defendants Lynn Thomas and Isiah Thomas are Indemnitors, and "[t]he Complaint includes short, plain statements supporting Plaintiff's claim that it is entitled to the relief requested from Lynn Thomas and Isiah Thomas" for breach of the Indemnity Agreement and other fees and costs. (*Id.*)

According to Plaintiff, the Supply and Service Application is part of the Indemnity Agreement, so Isiah Thomas and Lynn Thomas' names "in the section for Owners/Indemnitors" on the Supply and Service Application "does accompany and is part of the Indemnity Agreement." (*Id.* at 16.) Plaintiff argues that Isiah Thomas and Lynn Thomas intended to be parties to the Indemnity Agreement, and that such "intent can easily be determined from (1) the completion of the Application seeking a bond; (2) the handwritten names of Isiah and Lynn Thomas included in the section for Owners/Indemnitors on page one of the Application, (3) the signature of their representative Robbi Jones, (4) the issuance of the Bond, and (5) the use of that Bond to enter a contract with DEMCO." (*Id.* at 17.)

Plaintiff contends that Gre3n needed a bond in order to enter into the DEMCO contract, and that to obtain that bond, all of Gre3n's owners had to agree to be indemnitors. (*Id.*) It argues

that Defendants Isiah and Lynn Thomas "are listed as Owners/Indemnitors on the Application to induce Plaintiff to extend surety credit. Plaintiff relied on that representation when it issued the Bond." (*Id.*) According to Plaintiff, "Lynn Thomas and Isiah Thomas, and the entity Gre3n, LLC, would not have received the benefit of the Bond, a prerequisite to the contract with DEMCO, but for the agreement to indemnify surety." (*Id.* at 18.)

Plaintiff asserts that "[t]he Complaint (1) on its face (2) contains enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element to support a finding of a valid Indemnity Agreement between Lynn and Isiah Thomas and the Surety." (*Id.*) As such, it argues, the Court should deny the *Motion to Dismiss*. (*Id.*)

### C.    Defendants' *Reply* (Doc. 41)

In their *Reply*, Defendants argue again that Plaintiff was required to make "particular allegations establishing that Gre3n was created and used as a sham entity intended to defraud contracting parties, investors, and creditors[]"—and that it has failed to do so. (Doc. 41 at 1.) Defendants continue to argue that Lynn Thomas, Isiah Thomas, and Isiah International are not parties to the Indemnity Agreement and cannot be bound by it. (*Id* at 3.) Defendants argue that Gre3n is the only signatory to the Indemnity Agreement, that non-parties cannot be bound by indemnity agreements, that Robbi Jones signed only on behalf of Gre3n, and that Plaintiff cannot retroactively revise the contract now. (*Id.* at 4–5.) Defendants argue that "Plaintiff could have insisted, but did not, that a representative of Isiah Thomas, Lynn Thomas, or Isiah International actually sign the Indemnity Agreement for them." (*Id.* at 5.) Defendants reiterate their argument that the instructions on page one of the disputed document are separate from the Indemnity Agreement on page four. (*Id.*)

Defendants again maintain that "the Amended Complaint is improper because it incorporates all allegations and all counts into each cause of action[,]" which they argue would require Gre3n "to defend a contract claim that misidentifies the terms and parties to the contract." (*Id.* at 6.) They ask "that Counts I and II be dismissed as to it without prejudice so that a colorable and competent pleading be filed against Gre3n alone." (*Id.*)

Defendants next reiterate their argument that Count IV should be dismissed because the Amended Complaint does not plead sufficient facts to show "that Isiah International created and then operated Gre3n as a fraudulent sham entity, together with facts setting out other related attributes demonstrating its domination of Gre3n, the disregard of corporate formalities, and the stripping of assets to harm with the intent of harming creditors." (*Id.*) Defendants claim that "Isiah International's alleged role both in negotiating the DEMCO contract and its alleged ongoing involvement after execution actually eliminate Plaintiff's fraudulent entity claim[]" because it shows "that DEMCO was aware both of Isiah International's existence before and during the DEMCO contract, including its continued involvement in the performance of the DEMCO contract." (*Id.* at 7.) Defendants contend that despite this awareness, DEMCO never asserted any "contractual rights that could have revealed the purported fraud of which Plaintiff now complains[,]" and so there is no reasonable reliance as an element of fraud. (*Id.* at 7–8.)

Defendants further contend that Plaintiff ignores the evidence showing Gre3n's actual existence, "such as its W-9, insurance certificates, and Louisiana state-issued contractor's license." (*Id.* at 8.) Defendants argue this shows Gr3en was not a sham entity. They also argue that Plaintiff has not made any allegations in its Amended Complaint as to false representations made by Isiah International. (*Id.*) Instead, Defendants reiterate their argument that the only allegations Plaintiff makes that Gre3n is a sham entity are as follows:

> "Gre3n and Isiah International have certain common owners, directors and employees and phone numbers (ignoring that the phone number claimed in Amended Complaint, ¶8(i), is different that the phone number identified on the signature block on ¶8(g)); they utilize a same office (ignoring Gre3n's pleaded office location in Louisiana, Doc. 35 at ¶5, and Doc. 35-1 at 44); there is one website that provides certain information regarding both entities; they utilize the same outside counsel; and there are certain logos used that have the words 'Gre3n' and also 'Isiah International.'"

(*Id.*) According to Defendants, this is insufficient to show a sham entity. Defendants assert that that "under Delaware law, to sustain an alter ego claim under any theory, '[s]omething like fraud must be proven,' including the elements of 'reasonable reliance and intent to deceive.'" (*Id.* at 9 (citing *In re Moll Indust., Inc.*, 454 B.R. 574, 591 (Bankr. D. Del. 2012)).) Defendants argue that Plaintiff has incorrectly relied on inapt Delaware caselaw, and that it has not adequately demonstrated "that this is an 'exceptional case' to warrant the disregard of the corporate distinction between Gre3n and Isiah International." (*Id.* at 10.) Finally, Defendants assert, this is a mere breach of contract claim "without allegations of actual fraudulent manipulation of the corporate form" and is therefore insufficient to meet the standard for alter ego liability. (*Id.*)

### D.    Plaintiff's *Surreply* (Doc. 44)

In its *Surreply*, Plaintiff points to the language of the Indemnity Agreement, which it asserts "also binds affiliates, subsidiaries, joint venture entities, successors, assigns and heirs." (Doc. 44 at 1.) Plaintiff contends that although Defendants focus on the question of whether Gre3n and Isiah International are a single economic entity, which Plaintiff maintains they are, "[t]here is no question that Isiah International and Gre3n, LLC, at the very least, are affiliate entities[.]" (*Id.* at 1–2.) Plaintiff again argues that the two were single economic entities and that Isiah International did all negotiating, communicating, and agreed upon work. (*Id.* at 2.) It argues that the two "have no clear separation of identity." (*Id.*) Plaintiff reiterates its arguments as to the companies' shared

15

location, website, contact info, logo, and branding. (*Id.* at 2–3.) It also reiterates arguments about finances, comingled assets, shared legal representation, and Gre3n's alleged inadequate capitalization and insolvency. (*Id.* at 3.) Plaintiff asks the Court to deny the *Motion to Dismiss*. (*Id.*)

III.    LEGAL STANDARDS

    A.    **Rule 12(b)(6) Motion to Dismiss**

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). "Although a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). *See also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference").

### B.     Rule 9(b) Pleading Standard

"The Federal Rules require 'circumstances constituting fraud' to be pleaded 'with particularity.'" *Crosswell v. Rodriguez*, 120 F.4th 177, 184 (5th Cir. 2024) (citing Fed. R. Civ. P. 9(b)). "'At a minimum, Rule 9(b) requires allegations of the particulars of "time, place, and

contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."'" *Id.* (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) (quoting 5 Charles Alan Wright et al., Federal Practice and Procedure § 1297 (1990))). This has also been articulated as requiring the plaintiff to "plead the who, what, when, where, and why as to the fraudulent conduct." *Life Partners Creditors' Trust v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 117 (5th Cir. 2019). "Allegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive, however, may be pleaded generally." *Crosswell*, 120 F.4th at 184 (quoting *Tel-Phonic Servs. Inc.*, 975 F.2d at 1139).

## C.    Choice of Law

"Choice-of-law decisions can be resolved at the motion to dismiss stage when factual development is not necessary to resolve the inquiry." *Energy Coal S.P.A. v. Citgo Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016) (citing *Fortune v. Taylor Fortune Grp., LLC*, 620 F. App'x 246, 247–48 (5th Cir. 2015)). "In diversity cases, the law of the forum state governs that inquiry." *Id.* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)).

"Louisiana provides the following guidance:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

*Id.* (citing La. Civ. Code Ann. art. 3515). This is so issue-based "that the law of one state may govern one issue in the case and the law of a different state may govern another." *Id.*

## IV.   ANALYSIS

Defendants move to dismiss the Amended Complaint in toto against Defendants Isiah Thomas, Lynn Thomas, and Isiah International, with prejudice; to dismiss Count IV against Gre3n with prejudice; and to dismiss Counts I and II against Gre3n with prejudice. (Doc. 37 at 1.) In their *Memorandum of Law in Support of Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Amended Complaint*, Defendants advance arguments to dismiss Counts I and II against Defendants Lynn Thomas and Isiah Thomas; to dismiss all counts against Isiah International; and to dismiss Counts I, II and IV against Gre3n. (Doc. 37-1 at 1–2.) Defendants make no arguments as to Counts III and IV with respect to Defendants Lynn Thomas and Isiah Thomas.

### A.     Defendants Isiah Thomas and Lynn Thomas

Defendants argue that Counts I and II, which respectively allege (1) a breach of the indemnity agreement against the "Indemnitors" requiring reimbursement and payment of past damages and (2) that the "Indemnitors" breached the contractual indemnity obligations and are required to pay Plaintiff for its ongoing losses and expenses, (Doc. 35 at ¶¶ 55–67), should be dismissed against Defendants Lynn Thomas and Isiah Thomas because neither is a party nor signatory to the Indemnity Agreement, (Doc. 37-1 at 1–2). Plaintiff has, however, alleged that Lynn Thomas and Isiah Thomas are in fact named as indemnitors, (Doc. 35 at ¶ 23), and presents a document listing them in a box labeled "Owner Data/Indemnitors", (Doc. 35-3 at 1). Whether this is sufficient to actually make them indemnitors is a question of fact best resolved at the summary judgment or trial stage. However, at the motion to dismiss stage, Plaintiff has stated

claims for relief on Counts I and II against Defendants Lynn Thomas and Isiah Thomas that are plausible on their face.

Defendants advance no arguments as to why Counts III and IV should be dismissed against Defendants Isiah Thomas and Lynn Thomas. In a footnote, they argue that "[w]hile Counts I and II are the only counts with allegations specifically pertaining to them, to the extent that Plaintiff's Amended Complaint still asserts all causes of action against all Defendants, Isiah and Lynn Thomas should be dismissed from all counts, with prejudice." (Doc. 37-1 at 2 n.2.) Count III is a breach of contract claim alleging that Gre3n and Isiah International breached the original DEMCO contract. (Doc. 35 at ¶¶ 68–73.) It does not name Isiah Thomas or Lynn Thomas. (*Id.*) Count IV is Plaintiff's claim that Gre3n and Isiah International acted as a single economic entity. (*Id.* at ¶¶ 74–80.) It does not name Isiah Thomas or Lynn Thomas. (*Id.*) Therefore, the Court dismisses Counts III and IV against Defendants Isiah Thomas and Lynn Thomas without prejudice.

### B. Defendants Isiah International and Gre3n

#### a. *Counts I and II against Gre3n*

Defendants request that the Court dismiss Counts I and II against Gre3n because Plaintiff has "pleaded its Amended Complaint in such a way as to incorporate all allegations and all counts into each cause of action[]" and "has misdescribed the parties, terms and scope of the putative Indemnity Agreement[.]" (Doc. 37-1 at 4.) Questions of fact, such as the actual parties, terms, or scope of the document in question, are best taken up at the summary judgment or trial stage. At the motion to dismiss stage, the Court "accept[s] all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *In re Great Lakes*, 624 F.3d at 210. Plaintiff has named Gre3n as an indemnitor. (Doc. 35 at ¶ 23.) Plaintiff supports this allegation with the Indemnity Agreement, which lists Gre3n, LLC, as "Indemnitor (Business)" and is signed by Robbi

J. Jones. (Doc. 35-3 at 3.) Because Plaintiff has pled facts sufficient to state a claim against Gre3n in Counts I and II, the Court denies the *Motion to Dismiss* Counts I and II against Gre3n.

        *b.*      *Count IV against Gre3n and Isiah International*

Defendants argue that Count IV, which alleges that Gre3n and Isiah International are a single economic entity such that Isiah International should be held liable in this matter, (Doc. 35 at ¶¶ 74–80), should be dismissed because Plaintiff has not specifically pled facts to show "that Gre3n was an entity set up solely and intentionally to work a fraud on creditors" and that "Gre3n maintained a legal and independent significance of its own, which is all that Delaware law requires to respect the sanctity of the corporate form[,]" (Doc. 37-1 at 3). Plaintiff seeks to impose liability against Isiah International "for damages suffered by Plaintiff as a result of the breach of the DEMCO contract," (Doc. 35 at ¶ 73), as well as for all "debts and damages sued upon" in the Amended Complaint, (*id.* at ¶ 80), because it asserts that Gre3n and Isiah International act as a "single economic entity under Delaware law[,]" (*id.* at ¶ 77.) In other words, as both parties argue in their briefings, Plaintiff seeks to pierce the corporate veil. (Doc. 37-1 at 18; Doc. 40 at 4, 9.)

Defendants make much of the fact that Plaintiff, after citing to Louisiana law in its original complaint, have also cited now to Delaware law in its amended complaint. (*See* Doc. 37-1 at 2, 2 n.4, 3, 4, 14, 14 n.6.) Amendments are just that—changes. Plaintiff filed its amended complaint with leave of the Court. (Doc. 34.) The Amended Complaint takes the place of the original complaint, and it is the Amended Complaint—not the original complaint—against which Defendants must contend. Plaintiff argues that claims related to "[f]undamental issues of corporate structure[]" are properly brought under Delaware law. (Doc. 35 at ¶ 76.) The Fifth Circuit has "concluded that 'the law of the state of incorporation applies in determining whether it is appropriate to pierce the corporate veil.'" *Energy Coal*, 836 F. 3d at 462 (quoting *Patin v.*

*Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 646–47 (5th Cir. 2002) (citing *Quickick, Inc. v. Quickick Int'l*, 304 So. 2d 402, 406 (La. App. 1st Cir. 1974)). Gre3n is incorporated in Delaware, (Doc. 35 at ¶ 5; Doc. 38 at ¶ 5), so the Court will apply Delaware law in determining whether to pierce the corporate veil.

In order to pierce the veil through an alter ego claim under Delaware law, Plaintiff must plead (1) that Gre3n and Isiah International "'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness' is present." *Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*, 491 B.R. 747, 788 (Bankr. W.D. La. 2013) (citing *In re Moll Industries, Inc.*, 454 B.R. 574, 587 (Bankr. D. Del. 2011) (*quoting In re Broadstripe, LLC*, 444 B.R. 51, 101 (Bankr. D. Del. 2010))). "The factors relevant to whether one or more companies constitute a 'single economic entity' include: '(1) undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) the insolvency of the [] corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.'" *Id.* (quoting *Broadstripe*, 444 B.R. at 102). "With respect to the second prong of the alter ego doctrine—the presence of injustice or unfairness—while proof of actual fraud is not required, courts have held that 'something like fraud must be proven' and that a party seeking to pierce the corporate veil must prove 'reasonable reliance and intent to deceive.'" *Id.* (quoting *In re Moll Industries, Inc.*, 454 B.R. at 591 (citing *In re Foxmeyer Corp.*, 290 B.R. 229, 236 (Bankr. D. Del. 2003))).

First, Plaintiff does not make any explicit allegations as to undercapitalization, non-payment of dividends, siphoning of funds, or specific corporate formalities in the Amended Complaint. (*See* Doc. 35 at ¶ 8.) However, in its *Opposition*, Plaintiff asserts that the response it

received from Gre3n and Isiah International's legal counsel "in response to Plaintiff's demand for collateral suggests that Gre3n, LLC is not adequately capitalized and is now insolvent." (Doc. 40 at 13.) Plaintiff points to a letter that states "Gre3n has no assets from which it could deposit" collateral demanded by Plaintiff. (Doc. 35-4 at 3.) On that note, Plaintiff does allege that it was informed that Gre3n was insolvent. (Doc. 35 at ¶ 43.) Plaintiff also alleges a lack of corporate records, asserting that it "requested access to the Indemnitors' books, accounts, and records for inspection[,]" but that "[d]espite representations that financial records would be provided, Plaintiff has not received access to Indemnitors' books or records." (*Id.* at ¶¶ 44–45.) In its *Opposition*, Plaintiff argues that "[i]t is difficult for Plaintiff to gain possession of evidence regarding the siphoning of money from Gre3n, LLC to Isiah International, LLC, when Defendants refuse to provide those financial records despite their obligation to do so." (Doc. 40 at 10.)

These elements listed above are not a checklist for courts in determining whether a plaintiff has pled a single economic entity but are instead factors that the courts "may consider. . . , none of which are dominant[.]" *Winner Acceptance Corp. v. Return on Cap. Corp.*, No. CIV.A. 3088-VP, 2008 WL 5352063 (Del. Ch. Dec. 23, 2008); *see Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 385–86 (5th Cir. 2000) (quoting *Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1167 (La. 1991)). The Fifth Circuit has also articulated factors to consider as:

> "whether: (1) the parent and the subsidiary have common stock ownership; (2) the parent and the subsidiary have common directors or officers; (3) the parent and the subsidiary have common business departments; (4) the parent and the subsidiary file consolidated financial statements and tax returns; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operates with grossly inadequate capital; (8) the parent pays the salaries and other expenses of the subsidiary; (9) the subsidiary receives no business except that given to it by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; and (12) the subsidiary does not observe the basic corporate formalities,

> such as keeping separate books and records and holding shareholder and board meetings. *Nelson v. International Paint Co.*, 734 F.2d 1084, 1093 (5th Cir. 1984); *Miles v. American Tel. & Tel. Co.*, 703 F.2d 193, 195–96 (5th Cir. 1983); *Baker v. Raymond International Inc.*, 656 F.2d 173, 180 (5th Cir. 1981). See generally Douglas & Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193 (1929).

*United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691–92 (5th Cir. 1985). The Southern District of Texas has previously found that shared senior officers, shared legal representation, and communication via a single entity all support a finding that a plaintiff has satisfied the first prong of the alter ego pleading requirements. *7600 Beach Blvd. Invs., LLC v. Texas Corral LLC*, No. 4:22-cv-549, 2022 WL 20717363 at *4 (S.D. Tex. Aug. 1, 2022).

Plaintiff has pled that and more in asserting that Gre3n is merely a façade for Isiah International. (Doc. 35 at ¶¶ 7–8, 15, 16, 19, 31, 33, 37; *see* Doc. 40 at 12.) Plaintiff asserts that the two share a principle place of business, address, and phone number; that they share a website which identifies Gre3n as "an integral part of the Isiah International family of companies"; that Gre3n's logo reads "Gre3n, Isiah International, LLC"; that they share employees, including "common directors or officers and [] unified administrative control"; that their employees' email signature blocks use that same logo identifying them as employees of "Gre3n, Isiah International, LLC"; that all communications regarding Gre3n's operations came from Isiah International email addresses; and that, "[u]pon information and belief, Isiah International, LLC and Gre3n, LLC commingle assets, expenses, salaries and financing." (Doc. 35 at ¶ 8.)

In sum, Plaintiff has adequately alleged that Gre3n is insolvent, that it lacks adequate financial records, and that it acted as a façade for Isiah International.

Proceeding to the second prong of the alter ego, Plaintiff must plead "'something like fraud'" or "'reasonable reliance and intent to deceive.'" *Goodman*, 491 B.R. at 788 (quoting *In re*

*Moll Industries, Inc.*, 454 B.R. at 591). Plaintiff asserts that it pled fraud insofar as it pled false representations on the part of Gre3n and Isiah International. (Doc. 40 at 7–8.) Plaintiff points to the role of Isiah International in "the negotiating pre-contract[,]" which it argues led to Plaintiff's "reliance on false representations by Isiah International LLC that Gre3n, LLC would complete the work as stated in its contract with DEMCO." (*Id.* at 7 (citing Doc. 35 at ¶¶ 8, 15, 16–21).) Plaintiff alleged that all communications allegedly from Gre3n were in fact from Isiah International despite the fact that Plaintiff provided the bond only to Gre3n. (Doc. 35 at ¶¶ 8, 16, 19, 20.) Plaintiff alleges, essentially, that it believed it was issuing a bond to Gre3n—but was in fact unbeknownst to Plaintiff issuing that bond to Isiah International. (*Id.* at ¶¶ 8, 17, 21, 31, 33.) Plaintiff argues that it was "deceived by reliance on false representations by Isiah International, LLC that Gre3n, LLC would complete the work as stated in its contract with DEMCO." (Doc. 40 at 7–8.) Likewise, Plaintiff points to the Indemnity Agreement, which it alleges "was executed by Robbi Jones, on behalf of Gre3n, LLC, naming indemnitors: Isiah Thomas, Lynn Thomas, and Gre3n, LLC"— despite the fact that, according to Plaintiff, it was Isiah International that was the true party at interest. (Doc. 35 at ¶ 23, 31–33.) Plaintiff contends that this misrepresentation induced it to issue the bond. (*Id.* at ¶ 23.)

"The second prong of this test does not require allegations of fraud or a sham corporation to pierce the corporate veil." *In re Moll*, 454 B.R. at 591 (citing *Foxmeyer*, 290 B.R. at 236). However, it does require "something like fraud" and "the difference [is] 'largely superficial.'" *Id.* (quoting *Foxmeyer*, 290 B.R. at 236).

In order to plead fraud, Plaintiff would have to "plead the who, what, when, where, and why as to the fraudulent conduct." *Life Partners*, 926 F.3d at 117. Plaintiff has alleged that the fraud was perpetrated by Gre3n, LLC, and Isiah International, LLC, acting as one entity, (Doc. 35

25

at ¶¶ 8, 16, 31–33); that they misrepresented themselves as separate entities and misrepresented the entity that would perform the DEMCO contract, (*id.* at ¶ 33); that this occurred on or around May of 2022 and continued throughout 2023, (*id.* at ¶¶ 11, 13, 15–17, 35–43, 47); that although Defendants are located in Chicago and incorporated in Delaware (Gre3n) and Illinois (Isiah), (*id.* at ¶¶ 5, 7), these events involved a contract to do work in East Baton Rouge and Livingston Parishes, (*id.* at ¶ 11); and that the purpose was to induce Plaintiff to provide a bond so that Defendants would be able to procure the DEMCO contract, (*id.* at ¶ 25). Plaintiff has, therefore, pled something like fraud.

Plaintiff has pled sufficient facts to state a claim that Gre3n and Isiah International acted as a single economic entity. Defendants' *Motion to Dismiss* Count IV is denied.

> *c.*     *Counts I through III against Isiah International*

Finally, Defendants move to dismiss Counts I through III against Isiah International based on their argument that Plaintiff has not adequately pled that these should apply to Isiah International. (Doc. 37-1 at 4.) Because Plaintiff has adequately alleged its single economic entity claim, the Court denies the *Motion to Dismiss* Counts I through III against Isiah International.

## V.     LEAVE TO AMEND

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). Federal Rule of Civil Procedure 15(a) "requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (cleaned up). *See* Fed. R. Civ. P. 15(a). "[L]eave to amend the complaint should be refused only if it appears to a

certainty that the plaintiff cannot state a claim." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Plaintiff has failed to plead facts sufficient to state a claim against Defendants Isiah Thomas and Lynn Thomas for Counts III and IV. The Court will dismiss those claims without prejudice, and Plaintiff will be given leave to amend.

**VI.    CONCLUSION**

Accordingly,

**IT IS ORDERED** that the *Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss* (Doc. 37) filed by Defendants Gre3n, LLC, Isiah Lord Thomas, III, Lynn Thomas, and Isiah International, LLC, is **GRANTED IN PART** and **DENIED IN PART**. The Motion to Dismiss is granted as to Counts III and IV against Defendants Isiah Thomas and Lynn Thomas and denied as to Counts I and II against all Defendants, as to Count III against Isiah International, and as to Count IV against both Isiah International and Gre3n. Defendants did not argue that Count III should be dismissed against Gre3n. Counts III and IV against Defendants Isiah Thomas and Lynn Thomas are **DISMISSED WITHOUT PREJUDICE**. Plaintiff is granted leave to amend these claims. Any amendments are due 28 days from this order. Failure to amend will result in dismissal of claims with prejudice. Defendants are instructed to contact the Court if the 28-day period passes and Plaintiff has failed to file any amended complaint.

Signed in Baton Rouge, Louisiana, on <u>September 19, 2025</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**